# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZAN MCGARY, M.D., | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| WILLIAMSPORT REGIONAL | : | |
| MEDICAL CENTER; | : | |
| SUSQUEHANNA HEALTH SYSTEM; | : | |
| GEORGE MANCHESTER, M.D.; | : | |
| SCOTT CROLL, M.D.; | : | JURY TRIAL DEMANDED |
| JOHN BURKS, M.D.; and | : | |
| MARK A. OSEVALA, D.O. | : | |
|     Defendants | : | |

## COMPLAINT

NOW COMES, Plaintiff, Suzan McGary, M.D. ("Dr. McGary"), by and through her attorneys, Peters & Wasilefski, and files this Complaint against Defendants, Williamsport Regional Medical Center ("WRMC"), Susquehanna Health, George Manchester, M.D. ("Dr. Manchester"), Scott Croll, M.D. ("Dr. Croll"), John Burks, M.D. ("Dr. Burks") and Mark A. Osevala, D.O. ("Dr. Osevala"), for the following reasons:

## THE PARTIES

1. Plaintiff, Dr. McGary, is an adult individual, a resident and citizen of the Commonwealth of Pennsylvania, residing at 269 Blue Quill Lane, Cogan Station, Pennsylvania 17728, and a physician and surgeon, duly licensed to practice medicine and surgery in the Commonwealth of Pennsylvania.

2. Defendant, WRMC, is an open staff hospital licensed to provide medical care and surgery in the Commonwealth of Pennsylvania and located at 700 High Street, Williamsport, Pennsylvania.

1

3. Defendant, Susquehanna Health, is a for profit corporation licensed to do business in the Commonwealth of Pennsylvania and the owner and operator of Defendant, WRMC, with a place of business located at 1001 Grampian Boulevard, Williamsport, Pennsylvania.

4. Defendant, Dr. Manchester, is an adult individual, an employee of Defendant, Susquehanna Health, and is the Executive Vice President for Defendant, Susquehanna Health, and Chief Medical Officer for Defendant, WRMC.

5. Defendant, Dr. Croll, is an adult individual, an employee of Defendant, Susquehanna Health, and is Chairman of the Department of Surgery at Defendant, WRMC.

6. Defendant, Dr. Burks, is an adult individual, an employee of Defendant, Susquehanna Health, and is Medical Director of the Heart & Vascular Institute at Defendant, WRMC.

7. Defendant, Dr. Osevala, is an adult individual employed by Defendant, Susquehanna Health, and is a staff physician/surgeon with privileges to practice cardiothoracic surgery at Defendant, WRMC.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.A. Section 1337 for violation of the Sherman Act, 15 U.S.C.A. Section 1 and Section 2; and pursuant to 28 U.S.C.A. Section 1343 for violation of the 5th and 14th Amendment of the United States Constitution for the denial of due process and equal protection pursuant to 42 U.S.C.A. Section 1983,

9. This Court has personal jurisdiction over all Defendants because they reside or have a principal place of business in the Commonwealth of Pennsylvania and are citizens of the Commonwealth of Pennsylvania.

10. Venue is proper in this judicial district pursuant to 28 U.S.C.A. Section 1391 because it is the judicial district in which all Defendants reside and/or have principal places of business and it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

11. Plaintiff, Dr. McGary, is a graduate of University of Texas Medical School and served residencies in General Surgery and Cardiothoracic Surgery at the Pennsylvania State University, The Milton S. Hershey Medical Center serving as a Chief Resident and Clinical Instructor in both the Division of General Surgery, Department of Surgery, and in the Division of Cardiothoracic Surgery. Defendant, Dr. McGary, also was a Research Fellow in the Division of Cardiothoracic Surgery and Artificial Organs at the Pennsylvania State University, The Milton S. Hershey Medical Center.

12. Plaintiff, Dr. McGary, is Board Certified. She was originally Board Certified in 1994 and Recertified in 2004 by the American Board of Surgery, Certificate No. 39600, and also originally Board Certified in 1996 and Recertified in 2005 by the American Board of Thoracic Surgery, Certificate No. 5848.

13. After completing her Residency and Fellowship progrrams, Plaintiff, Dr. McGary, was employed in the following positions: 1995-1999 - Indiana University Medical Center, Department of Surgery, as Assistant Professor Cardiothoracic Surgery and attending physician/surgeon; 1995-1999 - Bloomington Hospital Department of Cardiothoracic Surgery, Bloomington, Indiana as and attending physician/surgeon; 1999-2001 – Susquehanna Health Systems, Department of Cardiothoracic Surgery, Williamsport, Pennsylvania, employee as attending physician/surgeon; 2002-4/2007 – North Central Cardiovascular and Thoracic

3

Surgeons, P.C., Williamsport, Pennsylvania, Private Practice in Cardiothoracic Surgery, with privileges at Williamsport Regional Medical Center; 4/2007-8/2008 – Sabbatical; Locum Tenens position as Cardiovascular and Thoracic Surgery for Clarion Health at Bloomington Hospital, Clarion Cardiovascular Surgery, Bloomington, Indiana; 10/2009 to 12/2011 – Cardiothoracic Surgeon at Sharon Regional Medical Center.

14. During the period October to December 2011, Plaintiff, Dr. McGary, had discussions/negotiations with Defendant, Susquehanna Health, representatives to become an employee of Defendant, Susquehanna Health, as a cardiothoracic surgeon. However, the discussions/negotiations ended without agreement and Plaintiff, Dr. McGary, decided to open her own cardiothoracic surgery practice in the Williamsport area and seek privileges at Defendant, WRMC.

15. Plaintiff, Dr. McGary, returned to her hometown in the Williamsport, Pennsylvania area intending to reopen her practice in Williamsport and to obtain privileges to admit patients and perform cardiothoracic surgery at Defendant, WRMC.

16. Defendant, WRMC, is a medical facility that operates with an "open staff", thus allowing those physicians and surgeons who are qualified to practice their profession to receive privileges at Defendant, WRMC.

17. In an "open staff" medical facility, the credentialing process includes reasonable requirements to judge whether a physician or surgeon is qualified and has sufficient experience to provide medical and surgical treatment to patients in a safe and professional manner. The requirements are not intended to exclude qualified physicians and surgeons from practicing their chosen specialty.

4

18. Defendants receive payments from both State and Federal sources, including but not limited to Medicaid and Medicare payments for services rendered, in addition to the receipt of both State and Federal funds for other reasons used in the operation of the business of Defendant, Susquehanna Health, and operation of the medical facilities of Defendant, WRMC, and the individual practices of the physician Defendants.

19. After the discussions for employment as a cardiothoracic surgeon with Defendant, Susquehanna Health, stalled, in January 2012, Plaintiff, Dr. McGary, applied for privileges at Defendant, WRMC, and completed the application and provided the information requested including her professional training and experience, current licensure, current DEA registration, Board Certification, and continuing medical education related to the clinical privileges requested, and all other information required for the application process.

20. Approximately two (2) months after submission of the application and requisite information, Defendant, Dr. Manchester, informed Plaintiff, Dr. McGary, that upon review of the surgical activity information, she did not meet the stringent criteria and that it was arbitrarily decided that her application would not be submitted for review and approval to the Credentials Committee, in contradiction to the procedures provided within the Medical Staff By-Laws..

21. Defendant, Dr. Manchester, in conjunction with Defendants, Dr. Croll, Dr. Burks, and Dr. Osevala, has exceeded his authority and in conspiracy with said other Defendants, has summarily denied Plaintiff, Dr. McGary, to have a review and possible interviews before the Credentials Committee, for purpose of having her medical background and experience fully examined and reviewed by the body that is empowered to review and determine whether privileges should be granted and renewed, and to have action taken upon her application in accordance with the By Laws of the Medical Staff. This conspiratorial action has effectively

5

deprived Plaintiff, Dr. McGary of her due process rights and the loss of her ability to practice and earn a living pursuing her chosen practice field in the Williamsport area. In order to justify this conspiratorial action, Defendants rely upon on onerous and outdated criteria to justify their actions.

22. The Medical Staff By-Laws specifically provide that:

> The completed application form shall be submitted to the Medical Director's Office along with any application fee. Upon receipt of the application, the Medical Director shall notify the CEO of Susquehanna Health and the President of the Medical Staff. A summary of the application information shall be transmitted to the Credentials Committee and the Chairman of each department in which the applicant seeks clinical privileges.

The Medical Staff By-Laws also provide that there is to be a review of the applicant's information by the Chairman of the Department in which the applicant is seeking privileges and the Chairman may interview the applicant and within thirty (30) days transmit a written report to the Credentials Committee with his recommendations and basis for the recommendations. Within sixty (60) days of receiving the report of the Chairman of the Department, the Credentials Committee, who may also interview the applicant, must transmit a written report to the Medical Executive Committee with its recommendations and basis for the recommendations. Within sixty (60) days of receiving the report of the Credentials Committee, the Medical Executive Committee must make its recommendations with regard to the appointment. If the Medical Executive Committee recommendation is adverse to the applicant's request for privileges, the Medical Staff By-Laws provides for appeal rights and a hearing may be had in accordance with the rules provided within the By-Laws. The By-Laws also provide that "A practitioner/applicant must exhaust all remedies afforded by these By-Laws before resorting to legal recourse through

the courts." However, Defendants are effectively preventing Plaintiff, Dr. McGary, from participating in the credentialing process and seeking the remedies provided by the By-Laws.

23. Further, Defendant, Susquehanna Health, and Defendant, WRMC, and the Defendant physicians had created a criteria related to recent surgeries that is onerous, outdated, and, upon information and belief, established solely to prevent another Cardiothoracic Surgeon from receiving privileges at Defendant, WRMC, so as not to compete with Defendant, Susquehanna Health, and the current Cardiothoracic Surgeon on staff at Defendant, WRMC, who is an employee of Defendant, Susquehanna Health, and to essentially create a closed staff situation related to cardiothoracic surgery in a medical facility that holds itself out to be an "open staff" facility. This had been done for the purpose of eliminating competition with regard to cardiothoracic surgery and to protect the profitability of said practice for Defendant, Susquehanna Health, and Defendant, Dr. Osevala..

24. Defendant, Susquehanna Health, and Defendant, WRMC, have established that in order to obtain privileges to perform cardiothoracic surgery at Defendant, WRMC, a surgeon must have performed 100 heart surgeries and 100 lung surgeries in the previous 12 months.

25. Plaintiff, Dr. McGary, has done research and has discovered that other medical facilities in Pennsylvania have far less stringent criteria as follows: Temple University Medical Center requires 50 heart surgeries and no minimum lung surgeries in the same time period; Robert Packer Hospital requires 50 heart surgeries and no minimum lung surgeries in the same time period; The Milton S. Hershey Medical Center does not require a predetermined number of surgeries but does request that a case log be submitted to be reviewed by the Chief of Cardiothoracic Surgery; Pocono Medical Center has the same requirements as The Milton S. Hershey Medical Center.

7

26. After Plaintiff, Dr. McGary, provided the information that she developed through her research and informed Defendants that if they persisted with their refusal to process her application for privileges, she would use legal means to protect and obtain her rights, Defendants revised the criteria; but, in reality, the new criteria was developed in a manner that was more restrictive and onerous because it requires a certain number of specific surgeries to meet the criteria, i.e. 30 valve replacements and 20 mitral valve repairs. This split criteria makes the requirement onerous and almost impossible to meet. The current cardiothoracic surgeon at Defendant, WRMC, would not be able to meet this criteria.

27. The Society of Thoracic Surgeons, the governing body for this specialty, has no minimum case volume recommendations for cardiothoracic surgery. The Society recommends evaluation based upon quality parameters as established in the Society of Thoracic Surgery database. The Society's recommendation is that each surgeon be judged on results rather than number of cases performed, which appears to be the criteria followed by The Milton S. Hershey Medical Center and the Pocono Medical Center.

28. In addition to the surgery performed by Plaintiff, Dr. McGary, at Sharon Hospital and her surgery performed at Defendant, WRMC, previously, since June 2012, Plaintiff, Dr. McGary, has been performing cardiothoracic surgery at The Good Samaritan Hospital in Lebanon, Pennsylvania in order to keep performing surgery to try to meet the criteria and has performed 21 heart surgeries of which 7 were valve replacements and 2 were mitral valve repairs. Plaintiff, Dr. McGary, in the last two years since submitting her application in January 2012, she would have a total of 76 heart surgeries with 29 heart surgeries over the last 12 months prior to the submission of her application. To date, taking into consideration the number of heart surgeries performed at Good Samaritan Hospital, she has performed 97 heart surgeries to date.

8

For the period two years prior to application she performed 20 valve replacements with 7 in the one year proceeding application and 5 mitral valves repairs over the two year period. With the addition of the surgeries performed at Good Samaritan Hospital, she has performed 27 valves replacements and 7 mitral valve repairs. The quality of the surgery performed by Plaintiff, Dr. McGary, over this period has been excellent.

29. In addition to the current case log as described above, Defendant, Susquehanna Health, and Defendant, WRMC, have complete case history for the eight (8) years that Plaintiff, Dr. McGary, had previously practiced at Defendant, WRMC, from 1999 to April 2007. There is clearly sufficient information available to determine the competency of Plaintiff, Dr. McGary, for an affirmative review of her credentials and granting of privileges at Defendant, WRMC.

30. Plaintiff, Dr. McGary, has offered several alternative solutions, including proctored surgeries to assure surgical competence, but Defendant, Dr. Manchester, has refused to consider any other alternative, present any other alternative to the Credential's Committee, or to attempt to resolve this matter in any other way but to refer to the onerous and outdated criteria and refuses to even allow the credentialing process to proceed to allow Plaintiff, Dr. McGary, to have the opportunity to considered for appointment of privileges. Upon information and belief, this conspiratorial action of Defendant, Dr. Manchester, Defendant, Dr. Croll, Defendant, Dr. Burks, and Defendant, Dr. Osevala, has been either mandated, condoned and/or sanctioned by Defendant, Susquehanna Health, and Defendant, WRMC.

31. Upon information and belief, it is averred that the current Cardiothoracic Surgeon who has privileges at Defendant, WRMC, and the previous surgeon in that position did not meet the previous criteria nor would the meet the current criteria being used to prevent Plaintiff, Dr.

9

McGary, from obtaining privileges and practicing her profession when each originally obtained privileges and began practicing.

32. Upon information and belief, it is averred that since the current Cardiothoracic Surgeon has had privileges at Defendant, WRMC, he has failed to perform the number of surgeries that would be required to obtain privileges at Defendant, WRMC.

## COUNT I
### Injunctive/Mandamus Relief

33. Plaintiff, McGary, incorporates the allegations contained in Paragraphs 1 through 32 above as if fully rewritten herein.

34. As fully discussed above, Defendant, Susquehanna Health, Defendant, WRMC, Defendant, Dr. Manchester, Defendant, Dr. Croll, Defendant, Dr. Burks, and Defendant, Dr. Osevela, have conspired to prevent Plaintiff, Dr. McGary, from practicing her chosen profession as a cardiothoracic surgeon and has refused to allow the process prescribed by the Medical Staff By-Laws for the processing of application for privileges to take place and have and are depriving Plaintiff, McGary, her due process and further denying her right to pursue her due profession in the Lycoming County area causing her to incur substantial damage.

35. In light of the actions of the Defendants, it is necessary to petition this Court for relief in the form of a mandamus ordering the Defendants to process Plaintiff, Dr. McGary's, application for privileges in accordance with the procedures established by the Medical Staff By-Laws and to enjoin them from taking any action to prevent the procedures to be followed and the process to be fully completed.

WHEREFORE, Plaintiff, McGary, respectfully requests this honorable Court to issue a mandamus ordering that the Defendants process Plaintiff, McGary's, application for privileges in

accordance with the WRMC Medical Staff By-Laws and to further enjoin Defendants from interfering with the process. It is further requested that the Court order that Defendants pay the costs of this litigation, including attorney's fees, in addition to any other relief that the Court deems appropriate.

### COUNT II
### Violation of Sherman Act – 15 U.S.C.A. Section 1 et. seq.

36. Plaintiff, Dr. McGary, incorporates the allegations contained in Paragraphs 1 through 32 above as if fully rewritten herein.

37. Section 1 of the Sherman Act, 15 U.S.C.A. Section 1 provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations is hereby declared to be illegal.

38. Section 2 of the Sherman Act, 15 U.S.C.A. Section 2 provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.

39. Defendants all purchase and utilize equipment and supplies in interstate commerce; from time to time treat patients from outside the Commonwealth of Pennsylvania; and receive substantial payments for providing medical services and facilities from organizations and entities outside of the Commonwealth of Pennsylvania, including but not limited to Medicaid, Medicare, and other insurance companies from outside the Commonwealth of Pennsylvania resulting in said Defendants being involved in interstate commerce.

40. Defendants all provide medical facilities and medical and surgical care and treatment generally within the Lycoming County and adjacent areas. There are no other

11

hospitals in Lycoming County serving the potential medical and surgical patients in said geographical area with regard to cardiothoracic surgery.

41. The performance of cardiothoracic surgery requires special equipment, e.g.. cardio-pulmonary by-pass equipment, specialized monitoring devices, and a specialized postoperative intensive care unit, and requires high entry barriers for surgeons to become competent suppliers of this type of surgery.

42. As more fully described above in Paragraphs 11 through 32, which have been incorporated herein by reference, the Defendants conspired to restrain trade for purposes of the monopolizing cardiothoracic surgery for the benefit of Defendants, Susquehanna Health, WRMC, and Dr. Osevala, in violation of the Sherman Act, Sherman Act, 15 U.S.C.A. Section 1 and Section 2.

43. As a direct result of the violation of the Sherman Act, Sherman Act, 15 U.S.C.A. Section 1 and Section 2, Plaintiff, McGary has sustained damages because she has been prevented from practicing as a cardiothoracic surgeon in the Lycoming County area.

44. Section 15 of the Sherman Act, 15 U.S.C.A. Section 15(a) provides:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendants resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

WHEREFORE, Plaintiff, Dr. McGary, demands judgment against Defendants in a sum greater than Seventy-five Thousand Dollars ($75,000.00), treble damages, interest and costs, including attorney's fees.

## COUNT III
## Violation of the 5th and 14th Amendment of the U.S. Constitution
## Denial of Due Process and Equal Protection

45. Plaintiff, Dr. McGary, incorporates Paragraphs 1 through 32 above as if fully rewritten herein.

46. As indicated above, Defendants have adopted the Medical Staff By-Laws that provide a procedure for the application for staff privileges and a procedure for having a hearing to address Plaintiff, Dr. McGary's, rights to a fair and impartial hearing with regard to her qualifications to obtain staff privileges and to practice her profession as a qualified cardiothoracic surgeon.

47. It is believed and therefore averred, that others similarly situated have been granted privileges under conditions that were lower than the standard that Defendants have required of Plaintiff, McGary, and therefore, Defendant, McGary, has been denied equal protection of her rights to practice her profession as a cardiothoracic surgeon.

48. As a result of Defendants conspiratorial actions, Plaintiff, McGary has been denied her due process and equal protection rights and has been significantly damaged as a result of the Defendants actions of preventing or interfering with her ability to practice her chosen profession in the Lycoming County area.

WHEREFORE, Plaintiff, McGary, demands judgment against Defendants in a sum greater than Seventy-five Thousand Dollars ($75,000.00) plus interest and the cost of the litigation, including attorney's fees.

13

## COUNT IV
## Breach of Third Party Beneficiary Agreement

49. Plaintiff, McGary, incorporates Paragraphs 1 through 32 above as if fully rewritten herein.

50. As indicated above, Defendants have established By-Laws that define the application process for obtaining privileges that are relied upon by third-party applicants in applying for privileges to practice at Defendant, WRMC.

51. The By-Laws establish a procedure that is to be followed by the various physicians involved in the process of review and approval of the application for privileges.

52. Applicants for privileges are instructed that they are to strictly follow the procedures outlined and provide certain information to comply with the procedures and that said applicants, such as Plaintiff, McGary, rely upon such provisions in the Medical Staff By-Laws as instructed by the Defendants.

53. The conspiratorial actions of Defendants in failing to follow the procedure established by the Medical Staff By-Laws, has prevented Plaintiff, Dr. McGary, from being heard with regard to her qualifications and deprived her of certain appeal rights resulting in her being prevented from having the opportunity to be considered for staff privileges pursuant to the procedures established and relied upon by her.

54. As a result of Defendants breach of the third party beneficiary agreement, Plaintiff has been deprived of her rights and prevented from practicing her profession as a cardiothoracic surgeon in the Lycoming County area to her great detriment and damage.

14

WHEREFORE, Plaintiff, McGary, demands judgment against Defendants in a sum greater than Seventy-five Thousand Dollars ($75,000.00) plus interest and the cost of the litigation.

## COUNT V
### Interference with Prospective Contractual Relationships

55. Plaintiff, Dr. McGary, incorporates Paragraphs 1 through 32 above as if fully rewritten herein.

56. As a result of the action of Defendants as described above, Plaintiff, McGary, has been prevented from entering into agreements with prospective patients to provide cardiothoracic surgery services that she could have had without the tortious interference by Defendants in their attempt to monopolize cardiothoracic surgery in the Lycoming County area.

57. Defendants, in their conspiratorial and intentional actions in failing to follow the procedure for application of Plaintiff, McGary, for privileges have acted with the purpose and intent to harm Plaintiff by preventing her from practicing her profession and causing her not to be able to enter into agreements to provide surgical services to her prospective patients in the Lycoming County area.

58. Defendants' conspiratorial and tortious actions were done without privilege or justification.

59. As a result of Defendants conspiratorial and tortious actions, Plaintiff, McGary, has suffered actual damage and claim is being made therefor.

WHEREFORE, Plaintiff, McGary, demands judgment against Defendants in an amount greater than the sum of Seventy-five Thousand Dollars ($75,000.00) plus interest and the costs of litigation.

### COUNT VI
### Conspiracy in Restraint of Trade

60. Plaintiff, Dr. McGary, incorporates Paragraphs 1 through 32 above as if fully rewritten herein.

61. It is believed and therefor averred that there was a combination or agreement between the individual Defendants and the corporate Defendants to conspire and commit an act in violation of the various statutes in order to monopolize the practice of cardiothoracic surgery for the profit of Defendant, Susquehanna Health, Defendant, WRMC, and Defendant, Osevala, to the exclusion of Plaintiff, McGary.

62. The conspiratorial, intentional, and tortious actions of Defendants, as described above, were done with the intent of injuring Plaintiff, Dr. McGary, by preventing her from entering into the active practice of cardiothoracic surgery in the Lycoming County area.

63. Defendants in conspiring to intentionally and tortiously act as described above were without justification to enter into the agreement in restraint of trade.

64. As a direct result of the conspiratorial intentional and tortious acts of Defendants, Plaintiff, Dr. McGary, has been prevented from practicing her profession as a cardiothoracic surgeon in the Lycoming County area and has been significantly damaged and claim is made therfor.

WHEREFORE, Plaintiff, McGary, demands judgment against Defendants in a sum greater than Seventy-five Thousand Dollars ($75,000.00) plus interest and the cost of the litigation.

                                                     PETERS & WASILEFSKI

                                      By: *s/Charles E. Wasilefski*
                                             Charles E. Wasilefski
                                             Attorney #21027
                                             Alex M. Hvizda
                                             Attorney ID #306565
                                             2931 North Front Street
                                             Harrisburg, PA 17110-1250
                                             [717] 238-7555, Ext. 110
                                             Attorneys for Plaintiff,
                                             Suzan McGary, M.D.

Date:   August 31, 2012